Good morning. May it please the court, Nina Wilder on behalf of appellant Roy Albert Lewis who is appealing his conviction of tax evasion. The appeal raises four separate issues. Three of those, sufficiency, admission of co-conspirators to the court, and then the appeal raises the issue of whether or not there is sufficient evidence to support the conviction of a co-conspirator. So, the case, I want to start with the samples of the signatures, of the statements, and limited examination of witnesses. These are issues that come up frequently before this court. Counsel, I had one problem that you can probably help me with. I hope so. On the tapes. It kind of bothered me that they came in because this dentist, what's his name, Lewis, wasn't there for the conversations that the tapes played for the jury revealed. Now, I didn't really see much importance to the hearsay argument because they weren't introduced for their truth. I mean, it just didn't matter what the truth was. What mattered was the content of the conversation to show scienter and willfulness of the conspirators. My problem with them was foundation to show that Lewis heard anything similar to what was said on the tapes in relevance to whether he, as opposed to other people, had willfulness. But it looked to me as though that's not an objection that Lewis raised to admission of the tapes. So it's none of my business. Tell me what the scope of the objection to the tapes was and what is properly before us on that. Well, the objection, as I recall, was that it was, one, hearsay, and, two, and this does get to the issue of foundation. That there was no evidence that Lewis was present, and, therefore, there was what could be seen as a foundational relevance argument, and, of course, also went to sufficiency, ultimately. It seems like the government's answer to that, as statements of other conspirators to show the purpose and object of the conspiracy, is good enough. That's a well-established traditional exception to those two rules. Those were the objections that were raised. But, again, implied in those objections or inherent in those objections was the overarching objection that there was no evidence that Dr. Lewis was present at any time during what was a 20-minute segment. And probably dispersed, of a 20-hour meeting. Now tell me something else about the tapes. Let's say the judge erred in letting the tapes in. I'm thinking maybe it's harmless, because I think even a high school kid could figure out that this was a phony tax shelter scheme. You have somebody sends you phony invoices for huge amounts of money that you know that you do not owe anybody. You send what purport to be payments on the phony invoices. They deposit them in your offshore bank account, or the mixed offshore bank account. And then you get your money, and it purports to be a loan, but you know perfectly well you're not borrowing money and you're not going to have to pay back the money. That is about as straightforward a phony tax shelter as I can imagine, so that you can then live your life as you would like. Why would the tapes even matter? Well, the tapes do matter, because for one, under cheek, the belief, the good faith belief under a cheek defense does not have to be reasonable. So that even if a high school student might realize that this, of course, was a fraudulent tax shelter, and it would be one would think it might be unreasonable to conclude otherwise, it has to be good faith, which means it is held in good faith. Why would anyone believe in good faith that he's paying a bill when he knows perfectly well it's not a bill, and believe in good faith that he's borrowing money when he knows perfectly well he's not borrowing money? He might not believe that, he might not have conclusions that those events are any different than represented. It is the tax implication of those events. The good faith belief as to the tax implications, the basis for the cheek ruling is the complexity of the tax code. And the reason that the tapes are important is because a large part of the defense, in fact the parts are complex. Should you depreciate your computer over three years, more or less standard, or over 10 years because they've been lasting you that long, or should you expense it because you've been buying a new one every year? That's kind of complex and interesting. But living on pre-tax income by using phony invoices and loans, that's not the complex part of the tax code. What renders it complex is that, and this is why the tapes are also important, is a big component of the defense. There were two main components of the defense. One was that Lewis was constantly being given reassurances that, in fact, this was legal, and Harris, Paul Harris and Bedford and all the principals would get up there and consistently reassure him that this was perfectly legal, and then they would talk some tax mumbo-jumbo. The second part --" I mean, it seems to me, number one, that one of the instructions doesn't even lap over onto the other. But tell my colleague, and his questions were right on as to where I was going in this particular matter, reviewing this record. But you can't argue, you can't have it out of both sides here. You can't say, oh, well, I was relying on all of this, and so because I was relying on all of this, this really makes a difference when we're dealing with harmless error. And then, on the other hand, say, but even though I said that and even though I said it many times, it's a bad deal for the judge to then give an instruction about it. It seems like you're arguing out of both sides of your mouth on that. I am not, Your Honor, because the fact is that that was not the defense that he presented. Even as the Court characterizes it, his defense was that he relied on this miscellany of people and that he was a particularly gullible person for a variety of personal reasons. He never, and I emphasize this, never asserted the specific defense as to which the judge gave the instruction, and that was that he relied in good faith on the advice of a qualified tax accountant. There is no such qualified tax accountant. He didn't raise the defense because he couldn't meet that defense. It's a difficult defense. The problem is that that is an affirmative defense. It is a burden-shifting defense. And the defense that he raised was essentially a reasonable doubt, cheap defense. He gave both instructions, didn't he? She. Yes, sorry, it was she. She gave both instructions. She didn't just give one. She gave one about the good-faith defense, which is one you're arguing, and she gave a second on another defense, which you might have been arguing based even on what I read in the transcript. It doesn't seem to me that she could just absolutely suggest that you were saying, well, there wasn't anybody with the sole idea of being an accountant when I can go through and point in the record to many times where it was brought out that one of those people upon which she was relying was an accountant. Well, there's a fundamental problem here, and that is that the defendant gets to choose his defense. In this case, the government. I can understand, ma'am, the defendant gets to choose his defense, but I can also understand that there is a pretty outlawed, very straight error that can be committed for the good judge, having been on the district court before, that if there is a possible defense out there that the defendant is rising, even if the defendant doesn't want an instruction, you better give the jury the instruction on that particular defense. And you see that all the time, not only in this type of a situation, but also in when you have a certain crime and you're going to convict them maybe of a lesser crime, so a lesser-included offense. You always include all of these things. Because that's a specific rule where there's a sua sponte duty on the part of the judge to give a lesser-included instruction when that's warranted. This is entirely different. This is different from Wiley, that Fifth Circuit case you cited. In Wiley, the judge gave a duress instruction where the defense didn't want it. But there, the duress conflicted with the defense. Here, the defense is good faith. So the judge is enabling the jury to know what the law is on good faith, when basically you say, I was a fool, I relied on all these smarter people than I am. It seems like Wiley has nothing to do with it, and the judge can tell the jury is going to need that. Why would the jury need that if it is not the defense? The judge does not determine the defendant's defense. It is often the case that a defense was good faith. His defense was he's a gullible guy and he relied on these people that are smarter than he is. His defense was never that he relied on the advice of a qualified tax accountant. That's his problem. When you rely, if you say, I'm real gullible, so I relied on my brother-in-law, you lose. If you say, I'm real gullible and don't know anything about taxes, so I relied on a qualified tax accountant, and the jury believes it, you win. So if your defense is good faith and reliance on other people, the jury is entitled to know what kind of people you can rely on and what kind of people you can't. But this was actually a setup because, in fact, there was a reason the defendant did not select that defense. For one, it shifts the burden. Unlike the good faith cheek defense. I don't understand why it shifts the burden. It seems to me that read as a whole, the instructions clearly said that the government had to prove beyond a reasonable doubt the absence of good faith. But then you get the last instruction after the other instructions is the qualified tax accountant instruction. And it says nothing, it makes no reference to the fact that it is a type of affirmative defense in which the government still has the burden. You don't have to say things over and over again in the instructions. You're free as the defense lawyer to tell the jury, yes, here's who we can rely on if he's going to rely on somebody else. But here's this other instruction, which is also part, and the government has to prove beyond a reasonable doubt that he didn't. One of these tower people doesn't purport to be an accountant or an attorney, just purports to be a genius. The other one purports to be and was presented to us as an attorney who knows all kinds of great stuff about how to pay less taxes. So now the government has to prove beyond a reasonable doubt that the defendant didn't rely on somebody that this defense embraces. And I go back to the point, and if one looks at the closing argument, I think it makes the point. The way that the reliance on qualified tax accountant works is it's an affirmative defense. Once you raise in our circuit, our phrase is some evidence, then the government has to prove beyond a reasonable doubt the absence of it. Affirmative defense would mean the defense has to prove it. If one looks at the elements, and the rule that the court is raising comes from cases in which the defendant asks for the defense. And the rule is that when the defendant asks for the defense, when the defense says that's my defense, then weak evidence, fairly insubstantial evidence, it is reversible error not to give that instruction. There is no case that says the government can ask for a defense theory of the case instruction. There's absolutely no such case. And I would add. It's not a defense theory of the case instruction. It's just an instruction that confines the good faith argument where a person purports to rely on people that aren't as ignorant as he is about taxes. But it does have distinct elements, and when one looks at the cases in which the instruction is denied, it is because the defendant did not meet those elements. And those elements are that the defendant made full disclosure that that disclosure. See, if I've got your argument right, if you present a good faith defense, and the good faith is my brother-in-law, he's not an attorney, he's not an accountant, but he's really, really smart and he knows a lot about taxes and he's in the Constitution Club that says we're not citizens and we don't have to pay taxes and all this stuff. He knows more than I do, and I just relied on my brother-in-law, then the judge is not permitted to instruct the jury that reliance on somebody else as a basis of good faith is established if the reliance is on an attorney or accountant. Well, if the theory of defense and the evidence presented by the defense does not, is not that he relied on an accountant. If the defense does not even attempt to meet the elements of that defense, and again, there are four particular elements, and one does. What is the judge supposed to do when the jury comes back with a question? Can a person avoid responsibility under this statute if he thinks his brother-in-law is smarter than he is and relies on his brother-in-law? Under Cheek, yes, the answer is yes. Whether the court should tell the jury that is another issue, but I also want to turn back to the conflict question, because there is an inherent conflict between the elements of a good faith reliance on a qualified tax accountant defense and the Cheek defense. Under Cheek, the belief does not have to be reasonable. It can be an entirely unreasonable belief. That's the heart of Cheek. Under the elements of the good faith reliance defense, the fourth element is that the defendant had no cause to believe the evidence was wrong. I didn't remember Cheek the way it said, and I just checked it. I don't think it's reliance on somebody else. It just lays out that the government has to prove willfulness. But I don't think it talks about the problem where a person says the reason that it says the government has to prove the law imposed the duty, the defendant knew of the duty, and that he voluntarily and intentionally violated that duty. But unless I'm forgetting part of Cheek, which is quite possible. It doesn't talk about the problem where the defendant says, yeah, I thought I knew of the duty, but somebody smarter than me about taxes said there was no such duty. But that is encompassed within the good faith belief aspect. It is a defense. Does Cheek say so? Well, Powell says so. Well, I shouldn't say that. Which case says so? What United States v. Powell at 955 F. Second 1206 says is the belief need not be reasonable, and there is no constraint on what you can use. Oh, I know the belief need not be reasonable. That's not the issue. Does one of them talk about the problem of relying on somebody else who knows more than you do? Well, it is if one looks at the various cases. If one looks at what's your best case for saying that you can get around willfulness by relying on somebody else, even though he's not an attorney or accountant? If there's a case that says that the good faith defense may be made out by showing reliance on somebody who's not an attorney or accountant, or if there's a case that says you can't give the attorney or accountant good faith reliance instruction if the person is not an attorney or accountant, I'd like to know it. I'm not aware of any specific case that says that, but it's implicit in all of the cases that involve denial of the attorney reliance instruction where the defendant has mounted a variety of defenses, including that I relied on somebody. That's implicit in those cases. Ms. Wilder, at the end of the day, doesn't the fact that the proper good faith instructions were given negate any possible confusion stemming from this good faith reliance instruction? No, it does not. Why not? Because, for one, it concerns exactly the same facts. The jury is being asked to look at the same facts under two different standards. The cheek, basically reasonable doubt standard, and an affirmative defense standard, which includes as its fourth element that there be a reasonable belief in the advice given. That's entirely contrary to the cheek defense. It is that inconsistency, as well as the burden shifting, that creates this problem. And, you know, in conclusion on that point, again, the government has not cited a single case, if we're talking about citing cases, in which a court has said the government can determine what the defense is, or even if a judge can determine what the defense is, determining what the defense is is the prerogative of the defendant. And that's a constitutional underpinning for that. It's essential both to the Sixth Amendment, the right to choose, the right to choose your counsel, the right to choose your strategies, and the right to choose your defense. All of those stem from the Sixth Amendment. Thank you, counsel. May I present the court? Counsel. I'm Gregory Davis for the United States. First, in response to your question about the tapes, Judge Kleinfeld, there was evidence in the record that it is undisputed that the defendant was present at the October seminar. At the October seven what? The October seminar. The transcript, the seminar from which the excerpts are. That's one of the tapes there was evidence he was probably present. Correct. The transcript pages 140 to 141 is indicating that the transcript excerpts were from the October seminar. You also have testimony by, I believe it was Paul Beacons at page 148 of the transcript, that the discussions at the various tower conferences about what was happening were similar. It's fair, as we cite in footnote 11, 10th and 11th circuits, have held that it's reasonable to infer that the defendant heard the excerpts. He was present during the day. There's no evidence that he was not in the room at the time. I guess I'm pretty happy, as long as you have evidence that this was a speech at the seminar and he was at the seminar. Yeah, he might have been in the men's room, but good chance he heard the speech at the seminar. Correct. I'm more worried about a tape where two guys are talking to each other and he's not there. And I thought there were some tapes like that. That was testimony as to Beacons separately. Beacons was basically, it was testimony by a co-conspirator. We established that there was a conspiracy. The problem is it tends to show willfulness. The activities of the conspiracy were pretty obvious. The willfulness is really the whole case. And if one co-conspirator who's, I think it was the head of tower, I can't remember exactly, he says to one of the other tax cheats who's there, look, privately, you and I both know this is phony as a $3 bill. But Lewis isn't there when they say that. There's substantial other evidence. It's prejudicial. It looks to the jury like Lewis knows it's phony as a $3 bill, and it's not fair. Well, there was overwhelming evidence of defendant's guilt, of his willfulness. You have the statements by Harris and Bedford that any reasonable listener is going to be able to infer that this is not really a legitimate scheme. You have Bedford's statement at the tower conference that tax fraud equals failure to report more than 25 percent of your income. Now you're talking about harmless error, I think. But I still want to know about a tape between two other guys when Lewis isn't there where the head of the operation and the other guy are talking about how phony the scheme is. Well, I think that's argument three. We referenced the statements by a co-conspirator can be admitted if you establish that the conspiracy existed, the defendant knew of and participated in the conspiracy, and that the statements were made in furtherance of the conspiracy. You've still got a 403 problem, whether the probative value exceeds the prejudicial impact. And here the conspiracy seems so obvious and the prejudicial impact so great that it raises a question in my mind. I don't believe the defendant objected on 403 grounds. I could be wrong, but I don't believe that was the case. I think also that the probative value exceeded and outweighed the prejudicial effect. The testimony was evident, was offering, was demonstrating, it gave background to the conspiracy, it explained a little bit about the conspiracy. It was keeping beacons involved in the conspiracy. It was a way of allaying his fears. He was concerned about maintaining financial control. We think that the probative value outweighed the prejudicial effect, but even if the court disagrees, we think any admission, any error in the admission was harmless based on the overwhelming evidence of defendant's guilt. Moving to the instruction argument, we definitely agree with the panel that we don't believe whatever defendant wanted to say, whatever he thought he was trying to present, he was presenting a good-faith reliance defense. You have defendant calling Dr. Berg, who testified that defendant was susceptible to appeals from someone who held himself or herself out as some higher professional authority. You have Dr. Berg testifying that defendant had a need for authority in his life. He would select authority and follow the authority. And the defendant was naive. You then have Dr. Carroll testifying that Harris held himself out as a consultant, an advisor, tax advisor, who would help Tower members conduct their business affairs in a way that would minimize their taxes. You have Harris' statements that they were working within the IRS rules. You have Robert Bedford, who presented himself as an attorney and a CPA, teaching at these seminars what the tax laws permitted, what they did not permit, at the Denver Tower Conference the defendant attended, among other things. Then you have defendants' cross-examination of Paul Beacons. Do you have enough here just with Bedford? He says, I'm an attorney and CPA. Yes. It helps that we have more. Lewis presents himself as a submissive guy who likes to follow authority. Exactly. Whatever he wants to call his defense, he presented a good-faith reliance defense. And we don't believe that there's any contradiction with the general good-faith cheek defense. Are there any cases that you happen to know of, one way or the other, on whether the judge can give this instruction without the defense asking for it? We looked very hard. We did not find anything one way or the other. As you pointed out, Wiley is highly distinguishable. First, the court says that the duress defense was not presented in that case. Oh, and by the way, he didn't ask for it. But the key thing is that it wasn't presented there. This case is completely different. The defendant presented a good-faith reliance defense. And if the court has no further questions, the government... All I just have one, is this Bedford, is there any significance to the fact that he is a minister of the Free Methodist Church? Not so far as the government is concerned, Your Honor. Or this case. No, it has no relevance. He was presenting himself as a tax attorney and a tax specialist. CPA. Correct. Apparently he was not a CPA, at least not at the time that he was making the statement, the claims that he was making. He did prepare the corporates. Correct. The defendant's corporate tax returns, correct? Correct. He prepared the corporate returns. He did not prepare the individual returns. But the defendant didn't tell his individual return preparer about all the funky goings-on on the corporate returns. Even though Bedford was not a CPA at the time, did he say he was? He claimed to be a CPA. And he was touted by Harris as a person of high moral integrity, a tax expert. He was touted as someone to be- Also, the moral integrity and the expert are different categories. That's correct. Did he also say he was an attorney? He also claimed to be an attorney. But they all fit. He also said he was a CPA, and he said he was a CPA? He said he was a CPA. He claimed to be a tax expert, and it all fits very nicely into why we think the defense was presented. This was exactly the kind of person that the defendant claimed that he would be relying upon. Was there any evidence that he was actually admitted to the bar? No, there was not. But that's not relevant in terms of the defense. I understand that, sure. No, there was nothing, as far as I'm aware, there was nothing in the record one way or the other. Thank you. Thank you. I would ask to make just one point about the qualification. Counsel, you went through all your time, but a lot of that was us getting into questions. So I'll give you 30 seconds. Wait until you get to the mic so it will be recorded. And that is the issue of whether Bedford was qualified. It is an element of the good faith reliance on a qualified tax accountant defense that the defendant demonstrates that the person he relied on was actually qualified, and it was the government's closing argument at page 884 in which the government smashes defense by saying, well, he could never prove he was qualified. These are two distinct defenses, and the fact that they keep getting conflated, a cheek reasonable doubt defense and the specific reliance on a qualified accountant defense demonstrates the level of confusion brought by the government's request. Thank you. Thank you, counsel. United States v. Lewis is submitted.
judges: Kleinfeld, Smith, Mills